**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LYONS & CLARK, INC., | |
| **Plaintiff,** | |
| v. | **CIVIL NO. 17-626 (JDR)** |
| MARK ALFANO, EXECUTOR OF THE ESTATE OF MICHAEL ARMAND HAMMER, DECEASED, | |
| **Defendant.** | |

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge[1]

Pending before the Court is Defendant Mark Alfano's ("Defendant" or "Mr. Alfano") *Motion for Summary Judgment*. (Docket No. 69). For the reasons outlined below, the Court hereby **GRANTS** Mr. Alfano's *Motion for Summary Judgment*. Judgment dismissing this action with prejudice shall be entered accordingly.

**I.   FACTUAL BACKGROUND**

These proceedings stem from a protracted and complex ownership dispute over a vintage 1927 Bentley Motors automobile (the "Bentley").[2] (Docket No. 69 at 1). The Bentley was originally

---

[1] United States District Judge for the District of Puerto Rico, sitting by designation.

[2] For non-gearheads, Bentley Motors is a luxury automobile company founded by brothers Walter Owen and Horace M. Bentley in the United Kingdom in 1919. The 1920s were a golden era in motor racing for Bentleys. *See Bentley Through the Ages*, Motor Sport Magazine, https://www.motorsportmagazine.com/special-article/bentley-from-race-to-road/152/bentley-through-the-ages/ (last visited March 31, 2025).

in the possession of Michael Armand Hammer ("Mr. Hammer"), the
original and now-deceased defendant whose estate is represented by
Mr. Alfano. (Docket Nos. 2; 59; 62 and 69 at 1). There are five
key parties: Mr. Hammer; Speedsportz, LLC ("Speedsportz"); John
Reaves ("Mr. Reaves"), the owner of Speedsportz; Plaintiff Lyons
& Clark, Inc. ("Plaintiff" or "Lyons & Clark"); and Mark Lyons
("Mr. Lyons"), an attorney and president of Lyons & Clark. (Docket
Nos. 69 at 2 and 74 at 1).

The following factual and procedural summaries are informed
by the underlying state court proceedings. (Docket Nos. 69-1; 69-
2; 69-3 and 69-4). Mr. Hammer first approached Speedsportz in or
before 2010 to perform restoration work on various vintage cars,
including the Bentley. (Docket No. 69-2 ¶¶ 2-3). When Mr. Hammer
needed legal assistance with a car issue, Mr. Reaves connected Mr.
Hammer with his longtime friend, Mr. Lyons. *See* id. ¶¶ 3-4. Mr.
Reaves and Speedsportz acted as go-betweens for Mr. Hammer and Mr.
Lyons. *See* id. ¶ 4.

In 2010, Mr. Hammer decided to sell the Bentley, but the car
was damaged by a third party before the sale could occur. *See* id.
¶ 5. In 2011, Speedsportz gained possession of the Bentley and its
title. (Docket Nos. 69-2 ¶ 5 and 74 at 2). Meanwhile, Mr. Lyons
filed two unsuccessful lawsuits over damage to the Bentley, which
alleged Speedsportz was the sole owner of the car despite Mr.
Hammer paying the legal fees for these suits. (Docket No. 69-2 ¶

6). A third unsuccessful suit was filed in 2012, also paid for by

Mr. Hammer and naming both Mr. Hammer and Speedsportz as

plaintiffs. *See* id. The pleadings of the third suit alleged that

Mr. Hammer had relinquished "all rights and interests" in the

Bentley, something later contested by Mr. Hammer. Id. Mr. Hammer

asked Mr. Reaves to return the Bentley and its title in 2014; Mr.

Reaves refused, although the parties contested details surrounding

the refusal. *See* id. ¶ 7. Mr. Lyons then told Mr. Hammer he had

told Mr. Reaves not to return the car.[3] *See* id.

## II.  PROCEDURAL BACKGROUND

### A. Oklahoma State Court Proceedings

Mr. Hammer filed suit against Speedsportz and Mr. Reaves in

the Tulsa County District Court on November 20, 2015 to assert his

rights in the Bentley and two other cars. (Docket Nos. 8 at 6; 69-

1 and 69-2 at 2, 6). *See also* Michael Armand Hammer v. Speedsportz,

LLC et al., No. CV-2015-1308 (Tulsa County Dist. Ct. 2015). The

trial court granted summary judgment to Mr. Hammer regarding his

ownership of the Bentley, which was reversed by Division I of the

Oklahoma Court of Civil Appeals on May 23, 2019. (Docket Nos. 8 at

7 and 69-2 ¶ 2). On remand, a jury trial was held to determine the

status of the Bentley; the jury returned a verdict for Mr. Hammer

---

[3] This information comes from the state appellate court opinion. (Docket No.
69-2 ¶ 7). Plaintiff "absolutely denies" this but does not provide (and the
Court cannot find) any binding legal authority preventing a federal district
court from considering a state court opinion that is part of the record in a
federal case. (Docket No. 74 at 4).

on September 24, 2021. Id. at 1-2. The Tulsa County District Court entered judgment for Mr. Hammer on October 4, 2021. (Docket No. 69-1). On May 26, 2022, the court awarded Mr. Hammer attorney's fees. (Docket No. 69-2 ¶¶ 1, 28). Mr. Hammer passed away on November 20, 2022. (Docket No. 59-1 at 1).

Speedsportz appealed to Division I of the Oklahoma Court of Civil Appeals, substituting Mr. Alfano, the executor of Mr. Hammer's estate, as plaintiff. Id. ¶ 1. *See also* Mark Alfano, Executor of the Estate of Michael A. Hammer v. Speedsportz LLC et. al., No. 119,967 (Okla. Civ. App. 2023). The appellate court affirmed the jury verdict and lower court decisions on October 17, 2023. Id. (Docket No. 69-2 at 1, 19). The Oklahoma Supreme Court issued a mandate for the appellate court's decision on December 20, 2023. (Docket No. 69-4).

**B. Federal District Court Proceedings**

While the state court proceedings were ongoing, Lyons & Clark filed the instant case against Mr. Hammer in the United States District Court for the Northern District of Oklahoma on November 16, 2017. (Docket No. 2). Lyons & Clark claimed that in 2014, Speedsportz gave it two promissory notes and a security agreement that pledged the Bentley as collateral for the notes. *See* id. ¶¶ 8-9. Lyons & Clark claims it then filed a lien on the Bentley to the Oklahoma Certificate of Title to perfect its security interest. *See* id. ¶ 10. Lyons & Clark also claimed that Speedsportz owes it

over $108,000.00, which could be recovered by taking possession of the Bentley and selling it. *See* id. ¶¶ 11-12. Lyons & Clark asserts that it had tried to intervene multiple times in the state court lawsuit but was denied by both the Oklahoma Supreme Court and the Tulsa County District Court. (Docket Nos. 2 ¶ 14 and 8 at 8-11).

On December 7, 2017, Defendant requested the Court dismiss the instant case or stay it while the state court litigation was pending. (Docket No. 11). The Court granted the stay on March 16, 2020. (Docket No. 30). After Mr. Hammer's death in 2022, Mr. Alfano was substituted in as Defendant. (Docket Nos. 52; 59 and 62). The stay was lifted on January 19, 2024. (Docket No. 67). Defendant filed the *Motion for Summary Judgment* on February 1, 2024. (Docket No. 69). Lyons & Clark filed its *Response* and accompanying exhibits on March 3, 2024. (Docket Nos. 74 and 75). Defendant filed a *Reply* on March 15, 2024. (Docket No. 76).

### III. LEGAL STANDARD

#### A. Summary Judgment Under Fed. R. Civ. P. 56

Summary judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if "under the substantive law it is essential to the proper

Civil No. 17-626 (JDR)                                                    6

disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144
F.3d 664, 670 (10th Cir. 1998) (citing Anderson, 477 U.S. at 242).

The movant "bears the initial burden of making a prima facie
demonstration of the absence of a genuine issue of material fact
and entitlement to judgment as a matter of law." Id. at 670-71
(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).
Next, the burden shifts to the non-movant "to go beyond the
pleadings" and provide "specific facts that would be admissible in
evidence in the event of trial from which a rational trier of fact
could find for the nonmovant." Id. at 671 (citations and internal
quotation marks omitted). Specific facts can be shown "by reference
to affidavits, deposition transcripts, or specific exhibits
incorporated therein." Id. (citing Thomas v. Wichita Coca-Cola
Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992)).

A court must "view the evidence and draw any inferences in a
light most favorable to the party opposing summary judgment."
Thomas, 986 F.2d at 1024 (citations omitted). A court should review
the record in its entirety and refrain from making credibility
determinations or weighing the evidence. See Reeves v. Sanderson
Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000); Fed. R. Civ.
P. 56(c)(3) (a court "need only consider cited materials" but can
"consider other materials in the record."). A court should "give
credence to the evidence favoring the nonmovant" as well as
"uncontradicted and unimpeached" evidence supporting the moving

party, "at least to the extent that that evidence comes from disinterested witnesses." Id. at 151 (citation omitted). Summary judgment may be proper if the nonmovant's case solely relies on evidence that is "merely colorable" or "not significantly probative." Whatley v. City of Bartlesville, Okla., 932 F.Supp. 1300, 1302 (N.D. Okla. 1996) (citation omitted). The existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Scott v. Harris, 550 U.S. 372, 379 (2007) (quotation omitted).

Summary judgment motions filed in the Northern District of Oklahoma are also subject to the Local Civil Rules. Local Civil Rule 56.1 requires that parties include a section in their filings stating their proposed material facts in "concise, numbered paragraphs" with accompanying citations. L. CV. R. 56.1(c), (e). A party's response brief to a motion for summary judgment must include a section responding "to the facts that the movant contends are not in dispute and shall state any fact that is disputed." L. CV. R. 56.1(c). "All material facts" in the movant's statement of material facts will be admitted for summary judgment purposes "unless specifically controverted by the statement of material facts of the opposing party, using the procedures set forth in this rule." Id. See Fed. R. Civ. P. 56(e)(2); Bell v. BOKF, NA, No. 12-CV-28, 2013 WL 1309411, at *2 (N.D. Okla. Mar. 26, 2013)

(admitting the movant's statement of undisputed material facts
when the non-movant did not comply with Local Civil Rule 56.1).

### IV.   FINDINGS OF FACT

To make its findings of fact, the Court reviewed Defendant's
*Motion for Summary Judgment*, Lyons & Clark's *Response*, Defendant's
*Reply*, the exhibits accompanying these documents, and the parties'
other filings in the instant case. (Docket Nos. 2; 6-6; 8; 8-16;
8-17; 8-21; 8-22; 8-23; 8-24; 8-27; 8-28; 8-30 69; 69-1; 69-2; 69-
3; 69-4; 74; 75; 75-1; 75-2; 75-3; 75-4; 75-5; 75-6; 75-7; 75-8;
75-9; 75-10; 75-11; 75-12; 75-13; 75-14; 75-15; 76; 76-1; 76-2 and
76-3). The Court makes the following findings of fact after
crediting only **material** facts that are properly supported by a
record citation and uncontroverted.[4]

### A. Underlying Circumstances

1. The Bentley is a 1927 automobile with the VIN 722404278007A
   that was owned by Mr. Hammer prior to the ownership dispute
   with Speedsportz and Mr. Reaves. (Docket Nos. 2 and 6-6).

2. Speedsportz is owned by Mr. Reaves. (Docket No. 2 at 2-3).

3. In or before 2010, Mr. Hammer approached Speedsportz to
   perform restoration work on his cars. This included the
   Bentley. (Docket Nos. 2 and 69-2 ¶¶ 2-3).

---

[4] References to a specific Finding of Fact shall be cited in the following
manner: (Fact ¶ _).

4. Mr. Hammer would occasionally transfer title to his vehicles to Speedsportz during the car restoration process, ostensibly for "particular purposes such as insurance coverage, customs processing, or ease of litigation." (Docket Nos. 74 at 6 and 75-10 ¶ 2).

5. Mr. Lyons is an attorney, president of Lyons & Clark, and friend of Mr. Reaves. (Docket Nos. 69 at 2 and 69-2 ¶ 4).

6. When Mr. Hammer needed legal assistance, Mr. Reaves connected Mr. Hammer with Mr. Lyons. (Docket No. 69-2 ¶¶ 3-4).

7. Mr. Reaves and Speedsportz served as intermediaries in the attorney-client relationship for Mr. Hammer and Mr. Lyons. Id. ¶ 4.

8. The Bentley was damaged by a third party in 2010, and because insurance did not cover the damage, Mr. Hammer sought help from Mr. Lyons. Id. ¶ 5.

9. Between 2011 and 2012, Mr. Lyons filed three unsuccessful lawsuits against the third party over damage to the Bentley, paid for by Mr. Hammer. Two of the lawsuits alleged Speedsportz was the sole owner of the Bentley, although the third lawsuit named both Mr. Hammer and Speedsportz as plaintiffs. (Docket Nos. 69-2 ¶ 6 and 75-2).

Civil No. 17-626 (JDR)                                                          10

10. The third lawsuit alleged Mr. Hammer had relinquished "all rights and interests" in the Bentley, something later contested by Mr. Hammer. (Docket No. 69-2 ¶ 6).

11. On or about February 7, 2011, Speedsportz obtained possession of the Bentley and its California title after Mr. Hammer's employee mailed the document to Speedsportz. (Docket Nos. 69-2 ¶ 5; 74 at 2; 75-1 and 75-10 ¶ 2).

12. In 2014, after the lawsuits against the third party concluded, Mr. Hammer asked Mr. Reaves to return the Bentley and its title. Mr. Reaves did not return the car or the title. (Docket Nos. 69-2 ¶ 7 and 75-10 ¶ 2).

13. There is a security agreement (the "Security Agreement") dated August 14, 2014 that pledges the Bentley as security to Lyons & Clark in exchange for two promissory notes executed by Speedsportz. (Docket Nos. 69 at 2; 75-4; 75-13 and 75-14).

14. The promissory notes and Security Agreement were executed on behalf of Speedsportz by Mr. Reaves. (Docket Nos. 6-4; 6-5; 6-6; 75-13 and 75-14).

15. Lyons & Clark filed a lien on the Bentley to the Oklahoma Certificate of Title on August 18, 2014. (Docket No. 75-3).

16. Speedsportz owes Lyons & Clark over $108,000.00. (Docket No. 2 ¶¶ 11-12).

Civil No. 17-626 (JDR)                                                          11

## B. State Court Litigation[5]

17. The ownership of the Bentley was the subject of an Oklahoma
    state court lawsuit (<u>Michael Armand Hammer v. Speedsportz,</u>
    <u>LLC et al.</u>, No. CV-2015-1308 (Tulsa County Dist. Ct. 2015)
    (the "Tulsa County case")) filed by Mr. Hammer against
    Speedsportz and Mr. Reaves on November 20, 2015. (Docket
    Nos. 69 at 1 and 75-5).

18. In the Tulsa County case, Mr. Hammmer sought a declaratory
    judgment requesting, *inter alia*, a determination that he
    was the owner of the Bentley and replevin of the car.
    (Docket No. 75-10 ¶ 3).

19. On September 11, 2017, Lyons & Clark filed a motion to
    intervene in the Tulsa County case to assert a lien on the
    Bentley via the Security Agreement. (Docket Nos. 8-16; 8-
    17 and 75-8).

20. After granting a hearing for Lyons & Clark, the Tulsa
    County District Court denied its request to intervene on
    September 18, 2017. (Docket Nos. 8-21 and 8-27 at 8).

21. On September 18, 2017, Lyons & Clark petitioned the
    Oklahoma Supreme Court for a writ of mandamus or
    prohibition to compel the judge in the Tulsa County case
    to grant Lyons & Clark's unsuccessful motion to intervene

---

[5] The Court focuses only on the proceedings that are material to the instant
motion.

and prevent Mr. Hammer from taking possession or ownership
of the Bentley in the meantime. This petition was centered
around Lyons & Clark's alleged security interest in the
Bentley stemming from the Security Agreement. (Docket Nos.
2 ¶ 14; 8-22 at 4 and 8-23).

22. On September 19, 2017, the Oklahoma Supreme Court denied
Lyons & Clark's petition. (Docket No. 8-24).

23. On October 13, 2017, Lyons & Clark filed a motion with the
Oklahoma Supreme Court seeking an emergency order staying
the Tulsa County District Court's partial summary judgment[6]
order that granted Mr. Hammer ownership to the Bentley.
The grounds for this motion also stemmed from Lyons &
Clark's alleged rights under the Security Agreement.
(Docket No. 8-28 at 2).

24. On November 13, 2017, the Oklahoma Supreme Court denied
Lyons & Clark's motion for emergency relief. (Docket No.
8-30).

25. On September 24, 2021, a jury in the Tulsa County case
returned a verdict finding that Mr. Hammer was the sole
owner of the Bentley and entitled to possession, and that
Speedsportz and Mr. Hammer did not have a joint venture on

---

[6] As noted in the Procedural Background, this summary judgment order was later
reversed and remanded in 2019, with a subsequent jury trial again validating
Mr. Hammer's ownership interest. (Docket Nos. 8 at 7; 69 at 1 and 69-2 ¶ 2).

the Bentley. Judgment was entered on October 4, 2021. (Docket Nos. 69 at 1 and 69-1).

26. Speedsportz appealed to Division I of the Oklahoma Court of Civil Appeals. As Mr. Hammer had passed away, Mr. Alfano, the executor of Mr. Hammer's estate, appeared in his stead. (Docket No. 69-2 at 2). *See also* <u>Mark Alfano, Executor of the Estate of Michael A. Hammer v. Speedsportz LLC et. al.</u>, No. 119,967 (Okla. Civ. App. 2023).

27. The Oklahoma Court of Civil Appeals affirmed the Tulsa County District Court's jury verdict and judgment on October 17, 2023. (Docket No. 69-2 at 1, 19).

28. The Oklahoma Supreme Court issued a mandate for the appellate court's decision on December 20, 2023. (Docket No. 69-4).

## V.   APPLICABLE LAW

### A. Preclusion

Federal courts grant preclusive effect to issues decided by state courts. *See* <u>Allen v. McCurry</u>, 449 U.S. 90, 95-96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."). In diversity actions, federal courts applying state substantive law also apply that state's preclusion law. *See* <u>Semtek Int'l Inc. v. Lockheed Martin Corp.</u>, 531 U.S. 497, 508 (2001). One prominent

preclusion doctrine is collateral estoppel, which "reduce[s] unnecessary litigation and foster[s] reliance on adjudication" as well as "promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." Allen, 449 U.S. at 95-96 (citing Younger v. Harris, 401 U.S. 37, 43-45 (1971)).

Collateral estoppel, or issue preclusion, "prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit." In re Corey, 583 F.3d 1249, 1251 (10th Cir. 2009). To establish collateral estoppel under Oklahoma law, a party must show:

> 1) that the party against whom it is being asserted was either a party to or a privy of a party to the prior action; 2) that the issue subject to preclusion has actually been adjudicated in the prior case; 3) that the adjudicated issue was necessary and essential to the outcome of that prior case; and 4) the party against whom it is interposed had a full and fair opportunity to litigate the claim or critical issue.

Knight v. Mooring Cap. Fund, LLC, 749 F.3d 1180, 1186 (10th Cir. 2014) (citing Durham v. McDonald's Rests. of Okla., Inc., 256 P.3d 64, 66-67 (Okla. 2011)). Issues are only precluded if they were "actually adjudicated and necessary or essential to the prior judgment." Carris v. John R. Thomas and Assocs., P.C., 896 P.2d 522, 528 (Okla. 1995). This means that an issue must be "properly raised in the pleadings or otherwise, submitted for determination,

and in fact determined." Nealis v. Baird, 996 P.2d 438, 458 (Okla. 1999) (citation omitted). An issue is necessary "if the judgment would not have been rendered but for the determination of that issue." Id. (citation omitted). The party who is being precluded "must have had a 'full and fair opportunity' to litigate the critical issue" in the underlying case. Id. (quoting Underside v. Lathrop, 645 P.2d 514, 516 (Okla. 1982)).

To be precluded as a privy of a party to a prior action, the new party "must actually have the same interest, character, or capacity as the party against whom the prior judgment was rendered." Hildebrand v. Gray, 866 P.2d 447, 450-51 (Okla. Civ. App. 1993). "[T]he scope of who qualify as 'privies' varies according to the circumstances of the particular case." Id. at 451. However, privity generally "involves a person so identified in interest with another that he represents the same legal right." Id. (internal quotation marks and citation omitted); see also Kinslow v. Ratzlaff, 158 F.3d 1004, 1106 n.2 (10th Cir. 1998) (collecting cases for the proposition that parties in privity must have a unity of interest with each other in relation to the legal rights at issue).

**B. Security Interests**

A security interest in property cannot be enforced unless it has attached to the relevant collateral. See In re Rudick, 639 B.R. 249, 252 (Bankr. N.D. Okla. 2022). In Oklahoma, attachment

"is governed by § 1-9-203 ["Article 9"] of Oklahoma's Commercial Code, which adopts § 9-203 of the Uniform Commercial Code." Id. Under Article 9, security interest becomes attached and thus enforceable against the debtor and third parties if: (i) "value has been given"; (ii) **the debtor has rights in the collateral** or the power to transfer rights in the collateral to a secured party"; and (iii) the debtor "has signed a security agreement describing the collateral" or other enumerated formalities regarding the security agreement are met. Id. (emphasis added); *see also* Bank of Beaver City v. Barretts' Livestock, Inc., 295 P.3d 1088, 1090 (Okla. 2012); Fairview State Bank v. Edwards, 739 P.2d 994, 998 (Okla. 1987) (describing the requirements for attachment); In re R.W. Sw., Inc., 23 B.R. 252, 257 (Bankr. W.D. Okla. 1982).

Notably, **the UCC places "little relative consequence" on title to goods**, and "mere possession" of goods is not sufficient to create a security interest in the goods. In re Rudick, 639 B.R. at 252 (emphasis added); Pontchartrain State Bank v. Poulson, 684 F.2d 704, 707 (10th Cir. 1982). Both the Oklahoma Supreme Court and the Tenth Circuit have upheld the "proposition that '[m]otor vehicle certificates of title in Oklahoma are documents of convenience and are not necessarily controlling of ownership of an automobile,'" albeit in cases outside the security interest context. Universal Underwriters Ins. Co. v. Winton, 818 F.3d 1103,

Civil No. 17-626 (JDR)                                                    17

1110 (10th Cir. 2016) (quoting <u>Green v. Harris</u>, 70 P.3d 866, 871 (Okla. 2003)).

**C. Declaratory Judgment**

The Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction...any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. A party seeking declaratory judgment faces two obstacles. First, the party must show that their suit is based on an "actual controversy," essentially equivalent to "the Constitution's case-or-controversy requirement." <u>Surefoot LC v. Sure Foot Corp.</u>, 531 F.3d 1236, 1240 (10th Cir. 2008). This means that "a party seeking relief must have an actual injury that is likely to be redressed by a favorable judicial decision." <u>United States v. Salazar</u>, 987 F.3d 1248, 1251 (10th Cir. 2021) (citation omitted).

Second, the court can use its discretion to decide whether to issue a declaratory judgment; a party is not automatically entitled to the judgment. *See* <u>Kunkel v. Cont'l Cas. Co.</u>, 866 F.2d 1269, 1273 (10th Cir. 1989). The Tenth Circuit provides five factors for courts to consider when weighing the need for a declaratory judgment:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

Predator Int'l, Inc. v. Gamo Outdoor USA, Inc., 793 F.3d 1177, 1190 (10th Cir. 2015) (citing Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, 685 F.3d 977, 980-81 (10th Cir. 2012) (internal quotation marks omitted)). Generally, a federal court should not hear a declaratory judgment action "over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." ARW Exploration Corp. v. Aguirre, 947 F.2d 450, 454 (10th Cir. 1991) (citation omitted). The existence of a parallel proceeding does not automatically bar the court from hearing the action. *See* id. Instead, "the court must decide whether the controversy can better be settled" in the pending action, "i.e., 'whether there is such a plain, adequate and speedy remedy afforded in the pending state court action, that a declaratory judgment action will serve no useful purpose.'" Id. (quoting Franklin Life Ins. Co. v. Johnson, 157 F.2d 653, 657 (10th Cir. 1946)).

Civil No. 17-626 (JDR)                                                    19

## VI.  DISCUSSION

Lyons & Clark opposes the *Motion for Summary Judgment* on various grounds. It asserts that the Court has no reason to decline jurisdiction and refuse to issue a declaratory judgment. (Docket No. 74 at 21-22). Lyons & Clark argues that the state court proceedings should not be given preclusive effect. *See* id. at 13. Lyons & Clark also claims that because Speedsportz possessed the Bentley and had title to the car when the Security Agreement was signed, Speedsportz established ownership of the Bentley. *See* id. at 9. Consequently, says Lyons & Clark, the Security Agreement is valid under Oklahoma law and Lyons & Clark holds a valid and enforceable security interest in the Bentley. *See* id. Lyons & Clark raises due process arguments, argues that Mr. Hammer gave Speedsports actual or apparent ownership of the Bentley that Lyons & Clark relied upon when entering into the Security agreement, and claims judicial estoppel prevents Defendant from making arguments in the instant case that are inconsistent with previous statements in the state court cases. *See* id. at 12, 15, 18. The Court considers these arguments as it evaluates the *Motion for Summary Judgment*.

## A. Plaintiff Lacks an Enforceable Security Interest in the Bentley

Defendant's *Motion for Summary Judgment* should be granted because Speedsportz lacks an ownership interest in the Bentley and thus could not give Lyons & Clark a security interest in the car.

(Docket No. 69). Lyons & Clark's arguments to the contrary do not create a genuine dispute of material fact to survive dismissal under Rule 56. (Docket No. 74); *see* Fed. R. Civ. P. 56(a).

> *i. Lyons & Clark is bound by the Oklahoma state court decisions*

Lyons & Clark erroneously avers it should not be bound by any of the Oklahoma state court proceedings through collateral estoppel. (Docket No. 74 at 12). But there is no genuine dispute that Lyons & Clark was in privity with Speedsportz in the Tulsa County case and collateral estoppel bars Plaintiff from challenging issues decided in that case. Fed. R. Civ. P. 56(a); (Docket No. 74). Thus, this Court must give preclusive effect to the issues decided by the Oklahoma state courts. *See* <u>Allen</u>, 449 U.S. at 95-96.

In the Tulsa County case, both Speedsportz and Lyons & Clark had a mutual interest in asserting Speedsportz's ownership rights in the Bentley. (Fact ¶¶ 17, 18, 25). Speedsportz's interest is self-evident: the entity would own a valuable vintage automobile if the Oklahoma courts validated its alleged claim over the Bentley. Lyons & Clark's interest is equally obvious: if Speedsportz had a valid interest in the Bentley, the Security Agreement is valid and Plaintiff can use the agreement to gain possession of the car and, if it chooses, sell it to recover the monies owed by Speedsportz. (Facts ¶¶ 17, 18). As Speedsportz and

Lyons & Clark sought the same outcome in the Oklahoma court proceedings (to validate Speedsportz's rights to the Bentley), Lyons & Clark is indisputably a party in privity with Speedsportz for preclusion purposes. *See* Hildebrand v. Gray, 866 P.2d at 450-51 (stating that a party in privity "must actually have the same interest, character, or capacity as the party against whom the prior judgment was rendered."). Although Lyons & Clark attempts to distinguish itself and the issues in this case by arguing that Speedsportz may have had possession of the Bentley *at the time the Security Agreement was signed*, this is ultimately immaterial given: (i) the jury verdict in the Tulsa County case did not acknowledge any interest held by Speedsportz in the Bentley, and (ii) as discussed below, Oklahoma statutes and caselaw do not support Lyons & Clark's assertions. (Docket No. 74); (Fact ¶ 25).

Ultimately, Lyons & Clark cannot avoid collateral estoppel on the issue of Speedsportz's interest (or lack thereof) in the Bentley. (Docket No. 74 at 13-14). First, as discussed above, Lyons & Clark is in privity with Speedportz, which was a party in the underlying action. *See* Knight, 749 F.3d at 1186. Second, the record is plain that the jury in the Tulsa County Case found that Mr. Hammer and Speedsportz did not have a joint venture in the Bentley and Mr. Hammer was the sole owner and only party entitled to possession of the Bentley. *See* id.; (Fact ¶ 25). This issue was affirmed on appeal by the Oklahoma appellate court. (Facts ¶¶ 26-

28). Third, this issue was necessary and essential to the outcome of the Tulsa County case because the question of the Bentley's ownership was the main issue at hand. *See* <u>Knight</u>, 749 F.3d at 1186; (Fact ¶ 25). There would be no case without this ownership dispute. Fourth, through its privy Speedsportz, Lyons & Clark had the "full and fair" opportunity to litigate the ownership issue. *See* <u>Knight</u>, 749 F.3d at 1186; (Facts ¶¶ 19-24). As the requirements for collateral estoppel are satisfied, Lyons & Clack is subject to collateral estoppel on the issue of Speedsportz's ownership of the Bentley and cannot contest it. *See* <u>Knight</u>, 749 F.3d at 1186.

The Court briefly addresses Lyons & Clark's due process argument. Lyons & Clark avers that its due process rights are violated if it is bound by judgments in the Tulsa County case and subsequent appeals because it was not a party to these cases. (Docket No. 74 at 12). However, because Lyons & Clark is in privity with Speedsportz, its due process rights are not violated by being subject to collateral estoppel and it is unable to dispute Speedsportz's lack of interest in the Bentley. (Fact ¶ 25). Furthermore, Lyons & Clark cites to <u>State Mut. Life Ins. Co. of Am. v. Hampton</u>, 696 P.2d 1027 (Okla. 1985) to argue that due process requires a party not be bound by a judgment in which it did not participate at trial. (Docket No. 74 at 12). However, this case is inapposite because it does not involve an instance of a person being in privity with a party. Instead, it involved a wife

who was acquitted of murdering her husband and argued the acquittal of criminal charges allowed her to recover her husband's life insurance proceeds under the state's slayer statute. *See* State Mut. Life Ins. Co. of Am., 696 P.2d at 1033. The husband's children and special administrator, who would receive the proceeds if the wife was barred by the statute, were *adverse* to the wife's interests and thus not bound by the outcome of the criminal case. *See* id. This contrasts with the instant case, where Lyons & Clark and Speedsportz held the same interest in the Bentley.

> ### ii. The Security Agreement does not give *Lyons & Clark* an *enforceable security interest in the Bentley*

Lyons & Clark's arguments must fail because Lyons & Clark does not hold an enforceable perfected security interest in the Bentley. (Docket No. 74 at 4). Speedsportz did not hold ownership rights to the Bentley or the ability to transfer rights in the collateral, which must be present for a security interest to be valid under Oklahoma law. *See* In re Rudick, 639 B.R. at 252 (noting that in Oklahoma, an enforceable security interest requires that the debtor have "rights in the collateral or the power to transfer rights in the collateral to a secured party."); (Fact ¶ 25).

A party does not have an enforceable security interest in collateral when the debtor— here, Speedsportz— never had rights in the collateral. *See* Bank of Beaver City., 295 P.3d at 1090; *see also* In re Rudick, 639 B.R. at 252 (noting that possessing the

title to goods carries little weight); *Pontchartrain State Bank*, 684 F.2d at 707 ("mere possession" does not create a security interest in goods). The Oklahoma state courts have found on three occasions that Mr. Hammer, not Speedsportz, held the only cognizable ownership interest. (Facts ¶¶ 25, 27, 28). *See Allen*, 449 U.S. at 95-96. Lyons & Clark can only allege that Speedsportz had possession and title to the Bentley at the time the Security Agreement was signed, and in Oklahoma, this does not definitively establish ownership such that Speedsportz would have rights in the Bentley. (Facts ¶¶ 11-13); *see Green*, 70 P.3d at 871; *In re Rudick*, 639 B.R. at 252. Lyons & Clark's arguments are further undercut by the state court decisions finding Speedsportz had no joint venture with Mr. Hammer relating to the Bentley nor a separate ownership interest in the automobile. (Fact ¶ 25).

Lyons & Clark relies on out-of-date Oklahoma caselaw to conclude that Speedsportz's possession of the Bentley and its title gave Speedsportz rights in collateral. (Docket No. 74 at 9-11). For example, it cites to *Mitchell Coach Mfg. Co. v. Stephens*, 19 F.Supp. 2d 1227, 1233 (N.D. Okla. 1998), for the proposition that holders of a vehicle title can prove ownership through the title. *Id.* at 9. However, since 1998, both the Tenth Circuit and Supreme Court of Oklahoma have held that possession of title does not definitively determine issues of vehicle ownership. *See Universal Underwriters Ins. Co.*, 818 F.3d at 1110; *Green*, 70 P.3d at 871.

Indeed, the <u>Universal Underwriters Ins. Co.</u> court explicitly criticized <u>Mitchell Coach Mfg. Co.</u> for "not accurately predict[ing] what the Oklahoma courts would rule with regard to the effect of a certificate of title on transfer of ownership" in light of certain provisions of state law. 818 F.3d at 1110.

As held and affirmed by the Oklahoma courts, Mr. Hammer, and by extension, his estate, are the only persons or entities with a protected ownership interest in the Bentley; the courts specifically disclaimed any joint venture between Mr. Hammer and Speedsportz that would give Speedsportz an interest in the car. *See* <u>Allen</u>, 449 U.S. at 95-96; (Facts ¶¶ 25, 27, 28). Without this interest, the law is clear: Speedsportz could not give Lyons & Clark a security interest in the Bentley, so the Security Agreement is invalid. *See* <u>Bank of Beaver City</u>, 295 P.3d at 1090. As the Security Agreement is invalid, Lyons & Clark's lien cannot be enforced against the Bentley. Lyons & Clark merely alleged that at the time the Security Agreement was executed, Speedsportz had the ability to transfer its interest in the Bentley. These bare allegations are insufficient to create a trial-worthy genuine issue of material fact. *See* <u>Scott</u>, 550 U.S. at 379 (the mere existence of an "alleged factual dispute" will not bar an otherwise appropriate motion for summary judgment). This is contradicted by the Oklahoma courts' findings, particularly Tulsa County case's jury verdict that "there was no joint venture between the parties"

and that only recognized Mr. Hammer's interest in the Bentley. (Docket No. 69-2 ¶ 1); (Fact ¶ 25).

In sum, there is no genuine dispute as to Lyons & Clark's lacking a security interest in the Bentley, even after looking at the evidence in the light most favorable to Lyons & Clark. *See* Fed. R. Civ. P. 56; Thomas, 986 F.2d at 1024. In the absence of a genuine dispute of material fact, granting summary judgment for Defendant is appropriate.

  *iii. Plaintiff's Additional Arguments Run Out of Gas*

Lyons & Clark raises various other arguments that are irrelevant or inapplicable to its claims. First, Lyons & Clark argues that Mr. Hammer cloaked Speedsportz with title and possession to the Bentley, which gave Speedsportz actual or apparent ownership to validate the Security Agreement and lien held by Lyons & Clark. (Docket No. 74 at 14-18). However, as noted by Defendant, the cases that Lyons & Clark cites in support of this proposition generally involve "buyer in the ordinary course of business" transactions, where a seller gives goods (*i.e.*, an automobile) to a dealer who sells them to a buyer in the ordinary course of business. *See* id.; *see, e.g.*, Sutton v. Snider, 33 P.3d 309, 311-12 (Okla. Civ. App. 2001). Although Lyons & Clark does not provide a statutory basis for its claims, it alludes to principles from § 2-403 of the Oklahoma Commercial Code (the "Code"). Section 2-403(4) specifically notes that the rights of

Civil No. 17-626 (JDR)                                                    27

lien creditors are governed by other provisions of the Code, such as Article 9, which is discussed in greater detail above. *See* Okla. Stat. Ann. tit. 12A, § 2-403(4).

As Lyons & Clark is seeking to protect its purported security interest in the Bentley and assert the validity of its lien, it cannot be said to be a purchaser as contemplated by Article 2 of the Code. Lyons & Clark's reliance on "buyer in the ordinary course of business" cases like Sutton is unwise because the Code defines a "buyer in the ordinary course of business" to exclude "a person that acquires goods" "as security for...a money debt." Okla. Stat. Ann. tit. 12A, § 1-201(b)(9) (West 2024). Lyons & Clark claims it obtained a security interest in the Bentley because Speedsportz owed it a debt, clearly exempting it from the Code's protections for buyers in the ordinary course of business. (Fact ¶ 13). Furthermore, Lyons & Clark did not actually purchase the car, so its reliance on Article 2 of the Code is wholly misplaced. *See* Okla. Stat. Ann. tit. 12A, § 2-403(4).

Second, Lyons & Clark claims that the doctrine of judicial estoppel bars Defendant from claiming Mr. Hammer never gave the Bentley's title to Speedsportz. (Docket No. 74 at 18). Judicial estoppel is a doctrine that "applies only to prevent a party from advancing a position inconsistent with a court's determination of a matter of fact made by the court on the basis of that party's assertions." Bank of Wichitas v. Ledford, 151 P.3d 103, 112 (Okla.

2006) (citation omitted). This doctrine does not apply because Defendant does not present a position inconsistent with his previous filings. Mr. Alfano does not contest that Mr. Hammer transferred possession of the Bentley to Speedsportz, that the title of the car was sent to Speedsportz, or that Mr. Hammer and Speedsportz were listed as co-owner plaintiffs on one of the 2011-2012 state court lawsuits. (Docket Nos. 69 and 76); (Fact ¶ 9). Instead, Defendant has repeatedly asserted that Mr. Hammer is the only party with a protected ownership interest in the Bentley and, while Mr. Hammer did deliver the Bentley and mail the title to Speedsportz, he did *not* intend to transfer Speedsportz ownership rights in the Bentley. *See* id.; (Fact ¶ 11). There is no genuine dispute as to whether Defendant's filings advance multiple inconsistent positions. Fed. R. Civ. P. 56(a).

Additionally, some of Defendant's allegedly problematic representations were made in his original petition in the Tulsa County case, not his amended, superseding petition. (Docket Nos. 76 at 9 and 76-3 ¶ 81); *see* Burkhalter v. Patton, No. 14-CV-685, 2015 WL 4387974, at *1 (N.D. Okla. July 15, 2015) (mooting an original petition that is replaced and superseded by an amended petition). Mr. Hammer and Mr. Alfano have not made inconsistent factual assertions that would constitute judicial estoppel, and Lyons & Clark's arguments to the contrary are so implausible that

they could not possibly constitute a genuine dispute of material fact. Fed. R. Civ. P. 56(a); *see* <u>Anderson</u>, 477 U.S. at 248.

## B. Declaratory Judgment Is Not Appropriate

Given that Lyons & Clark lacks a valid security interest in the Bentley, the Court denies its request for a declaratory judgment and shall not engage in further analysis on this topic. (Facts ¶¶ 25, 27, 28). Granting a declaratory judgment after the Oklahoma courts have spoken would serve no useful purpose, incentivize forum-shopping, create friction between the federal and state court systems, and "improperly encroach upon state jurisdiction." <u>Predator Int'l, Inc.</u>, 793 F.3d at 1190; *see* <u>Thomas</u>, 986 F.2d at 1024; <u>ARW Exploration Corp.</u>, 947 F.2d at 454.

Lyons & Clark argues that there is no "legal nor factual basis" for the Court to decline jurisdiction of its declaratory judgment claim. (Docket No. 74 at 21-22). This is incorrect. The Declaratory Judgment Act states that courts "may" issue these types of judgments, and the Court retains the ability to refuse to exercise jurisdiction over Lyons & Clark's claims. 28 U.S.C. § 2201. *See* <u>Kunkel</u>, 866 F.2d at 1273. It is appropriate to grant Defendant's *Motion for Summary Judgment* and refuse to exercise jurisdiction over Plaintiff's claims. *See* <u>Kunkel</u>, 866 F.2d at 1273.

### VII. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Mark Alfano's *Motion for Summary Judgment* at Docket No. 69. Judgment

**DISMISSING** this action **WITH PREJUDICE** shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 9th day of April 2025.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge